IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:22-cr-393 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| DELMAR JACKSON, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant Delmar Jackson's ("Defendant") Motion to Suppress Evidence Seized as the Result of an Illegal Stop, Seizure, and Search filed on May 17, 2023 ("Defendant's Motion"). (Doc. No 19.) On May 19, 2023, the United States of America filed a Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 20.) On June 6, 2023, Defendant filed a Reply Brief to the Government's Response ("Defendant's Reply"). (Doc. No. 22.) A hearing on Defendant's Motion was conducted on June 23, 2023 ("the hearing"), during which Agents Kevin Cesaratto ("Cesarrato") and Andrew Campbell ("Campbell") with the Ohio Investigative ("OIU"), ATF, testified, and Government's Exhibits 1 through 3 and 5 through 11, and Defendant's Exhibits A through C were admitted into evidence. Having reviewed the parties' briefing and evaluated the evidence adduced at the hearing, Defendant's Motion is now ripe for a decision.

**Background**

On July 14, 2022, a federal grand jury for the United States District Court for the Northern District of Ohio returned a four-count indictment charging Defendant with: two counts of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)

(Counts 1 and 2); Using or Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); and Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2) (Count 4.) (Doc. No. 1.)

The testimony adduced at the hearing demonstrates that these charges arose from a stop and detention of Defendant and a search of his vehicle that occurred at approximately midnight or 12:20 a.m. on July 11, 2021 at a Sunoco gas station located at 5326 Turney Road in Garfield Height, Ohio. Cesaratto and Campbell, as agents with the OIU/task force officers with the ATF, and the Garfield Heights Police were involved in a joint enforcement violent crime reduction detail there. Cesaratto has been with the OIU since August of 2014, and Campbell has been with the OIU for 9 and a half years. Cesaratto testified that during his almost nine years of experience with the OIU, he has conducted surveillance nearly every week, or "constantly" and has investigated and been involved in or witnessed hundreds of crimes of drug trafficking in progress. Campbell testified that undercover surveillance is a large part of what he has done on a weekly basis, and that three to five days per week he is involved in enforcement activities. He has made several hundred narcotics-related arrests and a couple of hundred arrests associated with firearms. Both Cesaratto and Campbell testified that they had been contacted by the Garfield Heights Police Department ("GHPD") to conduct with it a joint operation, and had been involved in the joint operation since May or June of 2021 due to an increase in violent crimes in the Turney Road strip area. This area included the Turney Plaza, located about a mile away from the Sunoco gas station where they stopped and detained Defendant.

On July 11, 2021, the Garfield Heights Police Officer riding with Agent Campbell had suggested to these agents that they conduct undercover surveillance of the Sunoco gas station where the stop occurred. Agents Cesaratto and Campbell testified that they did not have, and had not seen,

any reports indicating the number or substance of complaints or occurrences of crimes in the area but had relied upon the Garfield Heights Police Department's representations that there had been an increase in violent crimes, narcotics trafficking, and gun possession in the area. Based upon the testimonies of Cesaratto and Campbell, who the Court finds to be credible, the Court concludes that the Government has demonstrated that the Sunoco gas station where the stop of Defendant occurred is a high crime area.

The credible testimonies of Cesaratto and Campbell and exhibits admitted into evidence at the hearing, also establish the following facts. They observed a silver Infiniti sedan pull into the gas station and park at gas pump number 2 in the area between four gas pumps (pumps 2, 4, 6, and 8) and closer to the garages than the street. Cesaratto was parked in his undercover vehicle on one side of the gas station parking lot facing the front window of the sedan, and Campbell, with a Garfield Heights Police officer in his undercover vehicle, was parked on the other side of the gas station near a kerosene pump (number 9) facing the rear window of the sedan. He also had a partial view of the driver's side window. The agents were communicating by radio and using binoculars. They witnessed a female exit the front passenger seat of the sedan and go into the gas station. Cesaratto then saw the driver's door of the sedan open, and an individual later identified as Defendant drop a brown bag that was "flattened", with a plastic baggy sticking up, immediately grab and pick it back up, and then look around the parking lot.

Both Cesaratto and Campbell saw another vehicle pull up near gas pump number 6 on the side closer to the street. The driver of the vehicle later identified as Timothy Clayton ("Clayton") exited it and went directly to the passenger front door and got into the sedan. They saw no evidence of any communication between Defendant and Clayton before Clayton got into the front passenger seat of

3

the sedan. Agents Cesaratto and/or Campbell testified that Clayton was very skinny, very pale, had sunken eyes, was sweaty, and had a lethargic walk, or looked like someone who used or abused drugs.

After Clayton got into the sedan, the agents saw Defendant reach into the back seat and then prepare something on his lap, i.e., he was looking down and manipulating his arms. Cesaratto saw both Defendant and Clayton then angling or facing towards the other and moving their arms as though their hands came together to exchange something. He did not actually see their hands. However, Campbell testified that from his vantage point he could see the actual hand to hand exchange or touching together of the hands, as Defendant's and Clayton's hands were raised to where he could see them. As Clayton opened the door to exit the vehicle, both undercover vehicles pulled up to the sedan and conducted a stop of it and the agents detained Defendant and Clayton. The agents saw a pistol on the driver's floor in plain view and observed what appeared to be drugs on the driver's seat and conducted a search of the sedan, during which a digital scale and other drugs or suspected drugs were located.

**Analysis**

The issue presented in the parties' briefing is whether Cesaratto and Campbell had reasonable, articulable suspicion that Defendant was connected to criminal activity or had committed a crime at the time that he was stopped and detained. Both Defendant and the Government agree that reasonable suspicion must be based on specific, objective facts, and that in determining whether law enforcement had a particularized, and objective basis for conducting the stop, the totality of the circumstances must be considered. (Document No. 19, PageID # 64; Doc. No. 20, PageID #s 70-71; Doc. No. 22, PageID # 79.) The Government and Defendant disagree about whether Cesaratto and Campbell had a particularized and objective basis for suspecting that Defendant was engaged in the criminal activity

4

of selling controlled substances. That is because they disagree about what the evidence demonstrates is the totality of the circumstances.

According to the Government, the circumstances that gave these officers reasonable suspicion to conduct the stop and detain Defendant were that: it was about midnight or shortly after, i.e., late at night, when the agents witnessed Defendant's activity at a gas station located in a high crime area; Cesaratto saw Defendant open the driver's door and drop a brown bag that was flattened enough to allow Cesaratto to see a plastic baggy above the top of it; Cesaratto then saw Defendant pick up the bag, and look around the parking lot and then close his door: Clayton, in the opinion of experienced agents Cesaratto and Campbell, looked like someone who uses drugs, and they saw him pull up near Defendant's vehicle and go straight to it and enter the passenger front door without any communication with Defendant; neither Defendant nor Clayton pumped gas; the agents saw Defendant reach into the back seat and then based upon his movements, appear to prepare drugs on his lap; and then Cesaratto saw movements by Defendant and Clayton that indicated a hand to hand exchange and Campbell actually saw their hands come together; and right afterward Clayton opened the door as if to exit the car.

Defendant submits that the Government has not proven that the Sunoco gas station where the agents saw Defendant's actions and his interactions with Clayton and ended up stopping and detaining Defendant is a high crime area. Defendant acknowledges that the lateness of the hour, around midnight, may be considered in the totality of the circumstances, but submits that the lateness of the hour alone cannot give rise to reasonable suspicion, and further submits that the gas station was open and operating at that late hour. Defendant asserts that the agents did not indicate seeing any drugs or weapons prior to the stop, but only claim to have witnessed a hand-to-hand transaction. Defendant

disputes the agents' ability to see the activities or movements of Defendant and Clayton inside the vehicle, given the agents' distances from and positions in relation to Defendant's car, window tinting, and what Defendant submits would be the positions of Defendant's and Clayton's hands below the dashboard of the car. Defendant also submits that not all drug users look alike and therefore, Clayton's appearance does not support the agents' opinions that he looked like a drug user.

Again, the Court finds that Cesaratto and Campbell testified credibly and based upon the evidence adduced regarding their training and experience as law enforcement officers as briefly summarized above, and under the totality of circumstances outlined by the Government and supported by their testimonies, these agents had a particularized and objective basis to conclude that Defendant had engaged in the criminal activity of drug trafficking. Therefore, applying Sixth Circuit precedent, the Court finds that Cesaratto and Campbell had reasonable suspicion to stop and detain Defendant, and upon seeing the firearm in plain view on the driver's floor of the sedan and suspected controlled substances on the driver's seat, they had probable cause to search Defendant's vehicle.

Accordingly, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date: June 26, 2023

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE